**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| KEITH MASATO TAMASHIRO, | ) | NO. CV 12-10286-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | ) | **AND ORDER OF REMAND** |
| | ) | |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on December 3, 2012, seeking review of the Commissioner's denial of benefits. The parties consented to

---

[1] Carolyn W. Colvin, who became Acting Commissioner of Social Security as of February 14, 2013, is hereby substituted as Defendant in this matter. See Fed. R. Civ. P. 25(d)(1); 42 U.S.C. § 405(g).

proceed before a United States Magistrate Judge on January 4, 2013. Plaintiff filed a motion for summary judgment on June 20, 2013. Defendant filed a motion for summary judgment on August 19, 2013. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed December 6, 2012.

**BACKGROUND**

On June 3, 2010, Plaintiff filed an application for disability insurance benefits (Administrative Record ("A.R.") 114-15). Plaintiff asserts disability since January 31, 2006, based on alleged "subarachnoid hemorrhage," "severe short term memory loss," "double vision," and "artery pseudoaneurysm severe short term memory loss" (A.R. 114, 130). An Administrative Law Judge ("ALJ") found that Plaintiff suffers from severe "late results of stroke," short term memory loss, and borderline intellectual functioning (A.R. 28, 32, 34-35).

The ALJ found that Plaintiff retains the residual functional capacity to perform work at any exertion level, but limited to: simple repetitive tasks, low stress work, no work requiring operation of motor vehicles or working around machinery, or work at heights or around bodies of water (A.R. 24). Relying on the testimony of a vocational expert, the ALJ found that, with this capacity, Plaintiff could not perform his past relevant work but could work as a hand packager or sorter (A.R. 37-38 (adopting vocational expert's testimony at A.R. 64-65)). Accordingly, the ALJ found Plaintiff not disabled (A.R. 38). The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

**DISCUSSION**

Plaintiff contends, inter alia, that the ALJ erred in evaluating the opinions of Plaintiff's treating physicians. For the reasons discussed below, the Court agrees.

**A. The Relevant Medical Record**

As the ALJ acknowledged, the medical record reflects Plaintiff's brain trauma, and is "replete" with documented treatment for complaints regarding Plaintiff's memory loss. See A.R. 32, 34 (citing A.R. 180-385, 387, 390, 392, 399, 624, 637-842, 943-44); see also A.R. 682 (neurological treatment note from April 2008 reporting that cognition testing revealed impairment in multiple domains including memory, language, visuospatial abilities, and executive function).

```
 1  Plaintiff was admitted to UCLA Health Systems for treatment on
 2  February 2, 2006, following a subarachnoid hemorrhage that occurred on
 3  January 31, 2006 (A.R. 357-59).  Plaintiff was hospitalized until
 4  May 2, 2006, undergoing multiple operations to treat his condition.
 5  Plaintiff then was discharged to a skilled nursing facility.  See A.R.
 6  357-58.  It is not clear from the record how long Plaintiff remained
 7  in the skilled nursing facility.
 8
 9       The records also include references to Plaintiff having an
10  antalgic gait with some notation of loss of balance when heel to toe
11  walking on examination in November 2006, February 2007, May 2007,
12  January 2008.  See A.R. 388, 389, 391, 392; see also A.R. 677
13  (neurology treatment note from September 2008 reporting normal gait
14  but some difficulty with tandem gait), A.R. 667-68, 670-71, 673-74
15  (neurology treatment notes from February 2009, August 2009 and
16  February 2010 reporting "loss of balance" but normal gait), A.R. 895-
17  96 (treatment note from October 2010 reporting Plaintiff had a
18  "wobbly" gait and fell that morning, and on examination exhibited
19  unsteadiness walking, especially on heel and tandem walking, and
20  referring Plaintiff to neurology); but see A.R. 665, 680, 683, 686
21  (neurology treatment notes from December 2007, April 2008, June 2008
22  and June 2010 reporting normal casual gait).  A subsequent
23  neurological evaluation from January 2011 reported a normal casual
24  gait but a neurological examination "significant" for "slight impaired
25  ///
26  ///
27  ///
28  ///
```

4

1  short-term recall and diffuse hyperreflexia" (A.R. 943-44).[2]

3  The record contains partial copies of forms submitted by
4  Plaintiff's treating physicians for Plaintiff's private disability
5  insurance (A.R. 400-09). These forms, which are missing multiple
6  pages, date from approximately May 2006 through November 2008. Id.[3]
7  Available information from the forms is summarized as follows:

9  In 2006, treating neurologist Paul Vespa reported on the earliest
10 form (which, as supplied, consists of only page 1 of a 4-page form)
11 that Plaintiff was not able to work starting on January 31, 2006, and
12 was then in the UCLA Neuroscience ICU due to a ruptured right
13 vertebral artery pseudoaneurysm, coma, and hydrocephalus as
14 shown by a cerebral angiogram (A.R. 400). There is no information
15 concerning any particular future limitations Dr. Vespa may have
16 assigned to Plaintiff at that time.
17 ///
18 ///

---

[2] Hyperreflexia is defined as "overactivity of the physiological reflexes." See Merriam-Webster Medical Dictionary entry for "hyperreflexia," available online at http://www.merriam-webster.com/medical/hyperreflexia (last visited Sept. 18, 2013).

[3] On August 4, 2010, the Administration requested that the insurance company provide copies of Plaintiff's medical records. The insurance company replied by letter dated August 23, 2010, indicating that the company did not possess any medical records for Plaintiff (A.R. 843-44). The partial insurance forms provided have a facsimile transmission date of September 1, 2010. See A.R. 400-09. There is no indication in the record that anyone requested from the physicians themselves the missing pages from the insurance forms (or the missing content of the physicians' opinions).

1    In an October 2006 form (which, as supplied, consists of pages 1
2 and 3 of a 4-page form), treating psychiatrist Yong Lee reported that
3 Plaintiff had suffered a subarachnoid hemorrhage and had "significant"
4 short term memory loss (A.R. 403-04). Since the last report,
5 Plaintiff was status post craniotomy secondary to infection from a
6 previous craniotomy and had developed a seizure disorder (A.R. 403).
7 Plaintiff was taking anti-seizure medication (A.R. 403). Dr. Lee
8 opined that Plaintiff would be unable to be left alone but could
9 complete dressing, grooming, bathing, toileting, and showering
10 independently (A.R. 403). Dr. Lee indicated that Plaintiff then was
11 receiving acute brain injury rehabilitation, and could not return to
12 his usual job due to his short term memory loss (A.R. 404). There is
13 no further information concerning what other limitations, if any, Dr.
14 Lee may have assigned to Plaintiff at that time.

16    In a May 2007 form (which, as supplied, consists of pages 1 and 3
17 of a 4-page form), treating physical medicine and rehabilitation
18 doctor Vibhay Prasad reported that Plaintiff had poor attention and no
19 memory (A.R. 408-09). Dr. Prasad indicated that Plaintiff had a
20 seizure disorder and opined that Plaintiff could not drive, use power
21 equipment, or work at heights (A.R. 408). Dr. Prasad also opined that
22 Plaintiff was precluded from any jobs requiring memory (A.R. 409).
23 Plaintiff was undergoing cognitive rehabilitation and vocational
24 retraining (A.R. 409). There is no further information concerning
25 what other limitations, if any, Dr. Prasad may have assigned to
26 Plaintiff at that time.
27 ///
28 ///

1    Dr. Prasad provided another form in January 2008 with more detail
2 (the record includes pages 1, 2 and 3 of a 4-page form). See A.R.
3 405-07; see also A.R. 390-91 (treatment note from same date). Dr.
4 Prasad reported that objectively Plaintiff had mild left weakness, an
5 ataxic left leg, impaired attention, delayed processing speed,
6 impaired short term memory, and that subjectively Plaintiff had
7 forgetfulness, falling, and difficulty reading (A.R. 405). Plaintiff
8 was in cognitive rehabilitation (A.R. 405). Dr. Prasad opined that
9 Plaintiff was unable to live independently because his memory and
10 cognitive impairments make him unsafe, and that Plaintiff could not
11 drive or operate machinery (A.R. 405). Dr. Prasad indicated that
12 Plaintiff would have limitations standing, sitting, walking, bending,
13 stooping, lifting, and carrying because he "looses" [sic] his balance,
14 and limitations using his hands because his left side is mildly weak
15 (A.R. 406). Inexplicably, however, Dr. Prasad checked a box under
16 "physical impairment" indicating "no limitation of functional
17 capacity; no restrictions" (A.R. 406). Dr. Prasad opined that
18 Plaintiff is too forgetful to work on projects without direct
19 supervision or to interact with clients, but could work in supervised
20 environments if he did not drive to work (A.R. 407). Dr. Prasad did
21 not expect a change in Plaintiff's condition, explaining that no
22 further recovery was expected and Plaintiff's condition had reached a
23 plateau functionally (A.R. 407).

25    In a November 2008 form (which, as supplied, consists only of
26 pages 1 and 3 of a 4-page form), treating family medicine physician
27 Lawrence Hwang reported that Plaintiff had repeated seizures since the
28 most recent previous report (A.R. 401). Plaintiff could not drive or

7

ride a bicycle (A.R. 401). Dr. Hwang opined that Plaintiff would be limited from any jobs requiring long term memory or "excessive ambulation," but could work in a "seated workplace" (A.R. 402). There is no further information concerning what additional limitations, if any, Dr. Hwang may have assigned to Plaintiff at that time.

### B. The ALJ's Decision

In finding Plaintiff not disabled, the ALJ rejected Dr. Vespa's one-page opinion (A.R. 400) as assertedly: (1) conclusory; (2) lacking explanation or any clinical or diagnostic findings; and (3) inconsistent with other evidence of record (A.R. 35). The ALJ did not mention any of the above-summarized treating physician opinions from Dr. Lee, Dr. Prasad,[4] or Dr. Hwang. See A.R. 35.[5]

### C. Discussion

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . . This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495

---

[4] The ALJ did mention Dr. Prasad's records from 2006-07, which records predate the above-summarized opinions from Dr. Prasad (A.R. 33, 35).

[5] From the ALJ's limited reference to the insurance form from Dr. Vespa (A.R. 35), it is not clear whether the ALJ was aware that the insurance forms provided were incomplete.

8

F.3d 625, 631-33 (9th Cir. 2007) (discussing deference owed to treating physician opinions). Even where the treating physician's opinions are contradicted,[6] "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (citation and quotations omitted).

Furthermore, "[t]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty exists even when the claimant is represented by counsel." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); see also Sims v. Apfel, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . ."). As effective at the time the ALJ rendered his decision, section 404.1512(e) of 20 C.F.R. provided that the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved,

---

[6] Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

9

the report does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." See 20 C.F.R. § 1512(e) (eff. June 13, 2011 through Mar. 25, 2012);[7] see also Smolen v. Chater, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them. He could also have continued the hearing to augment the record") (citations omitted). The ALJ's duty under former section 404.1512(e) is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

Here, the ALJ erred in failing to develop the record with respect to the pages missing from each of the treating physician's opinions, including the pages missing from Dr. Vespa's opinion. See 20 C.F.R. 404.1512(e) (2011). The ALJ also erred in failing to mention the opinions of Drs. Lee, Prasad, and Hwang, and in failing to state "specific, legitimate" reasons for implicitly rejecting the portions of those opinions that were inconsistent with the ALJ's decision. See Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) ("Of course, an ALJ cannot avoid these requirements [to state specific, legitimate reasons] by not mentioning the treating physician's opinion and making findings contrary to it."); Salvadore v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990) (implicit rejection of treating physician's

---

[7] Paragraph (e) has since been deleted from this section. See 20 C.F.R. § 404.1512.

10

opinion cannot satisfy Administration's obligation to set forth "specific, legitimate reasons").

The Court is unable to conclude that these errors were harmless. The ALJ rejected Dr. Vespa's opinions, at least in part, based on a perception that the opinions lacked explanation and support. A more developed record might have provided sufficient explanation and support. Both Drs. Prasad and Hwang opined that Plaintiff would have limitations standing and walking (A.R. 402, 406). Dr. Prasad attributed the limitations to balance problems, which are documented in the record. See, e.g., A.R. 391, 895-96; see also A.R. 162 (Disability Report - Appeal form dated October 10, 2010, reporting that Plaintiff had been unsteady with walking beginning in October 2010). Dr. Hwang opined that Plaintiff could work only from a seated position. Dr. Lee believed Plaintiff was unsafe to be left alone.

Defendant's Motion discusses the partial opinions of Drs. Lee, Prasad, and Hwang, and argues reasons why the ALJ may have implicitly accepted or rejected those opinions. See Defendant's Motion, pp. 3-5. Even if the opinions in the record from these treating physicians were complete (which they are not), the Court would be unable to affirm the ALJ's decision on the basis of any of the reasons Defendant hypothesizes. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

///
///
///

Because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances).[8]

**CONCLUSION**

For all of the foregoing reasons,[9] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 24, 2013.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[8] There are outstanding issues that must be resolved before a proper disability determination can be made in the present case. For at least this reason, the Ninth Circuit's decision in Harman v. Apfel, 211 F.3d 1172 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) does not compel a reversal for the immediate payment of benefits.

[9] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.